1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRAVIS BEARDEN,

                                    Plaintiff,

       v.

CITY OF OCEAN SHORES, et al.,

                                    Defendants.

CASE NO. C21-5035 BHS

ORDER

13      This matter comes before the Court on Defendants City of Ocean Shores and Dean

14  Dingler's motions for summary judgment, Dkts. 15, 28. Because Plaintiff Travis Bearden

15  fails to establish a genuine issue of material fact on any of his claims and Defendants are

16  entitled to judgment as a matter of law, the Court grants the motions.

17                              **I.    BACKGROUND**

18      Bearden was employed as a firefighter for the City of Ocean Shores while he was

19  also a member of the United States Army Reserve. At the end of 2013, Bearden attended

20  basic training as a reservist, followed by advanced individual training. Dkt. 16 at 4. The

21  advanced individual training ended in March 2014 and, thereafter, Bearden returned to

22  work at the City. *Id.*

1    During his leave, the City paid Bearden through his use of other paid leave, "Kelly

2    days,"[1] and 21 days of accrued military leave pursuant to RCW 38.40.060. Dkt. 17 at 2,

3    ¶ 3. Bearden exhausted this paid leave in January 2014. *Id.* He did not return to work

4    until March 2014. *Id.* Because Bearden was on unpaid leave throughout February 2014,

5    no contributions were made to his retirement plan for that month. *Id.*

6    Beginning October 2017, Bearden again went on military leave. He provided the

7    City with an annual schedule of the dates that he was required to report for military duty

8    between October 1, 2017, and September 30, 2018. Dkt. 19 at 3, ¶ 5; 65–66. Bearden

9    submitted this schedule pursuant to a state statute, which provides that public employees

10   are entitled to "twenty-one days" of paid military leave "during each year beginning

11   October 1st and ending the following September 30th in order that the person may report

12   for required military duty, training, or drills." RCW 38.40.060(1).

13   Bearden subsequently requested paid military leave for March 7, 2018, even

14   though this date was not listed on the schedule. *See id.* at 3, ¶ 6; 65–66. In response to

15   this request, the City's fire chief at the time, David Bathke, sent Bearden a memorandum

16   requesting him to provide the City with "orders . . . that reflect this March 7, 2018

17   participation date." Dkt. 17 at 32. Bearden responded that he "did not have orders" and

18   asked Bathke to cite to a "state or federal ruling" requiring orders to be produced. *Id.* at

19   34.

20

21   ──────────────

22   [1] Kelly days are accrued paid leave days "provided to firefighters under their union contract to account for their irregular work schedules." Dkt. 17, ¶ 8.

ORDER - 2

Bathke sent Bearden another memorandum, informing him that, under RCW 38.40.060, military leave applied to only *required* military duty, training, or drills. *Id.* at 36. Bathke also informed Bearden that he could submit "a letter or other documentation from [his] commanding officer to establish that [his] absence on March 7 was for 'required military duty, training, or drills.'" *Id.* Ultimately, Bearden did not provide the City with any documentation indicating that he was required to report for military duty, training, or drills on March 7, 2018. *Id.* at 3, ¶ 7. Accordingly, the City did not charge this day to Bearden's military leave and, instead, charged it to other accrued leave. *Id.*

In October 2019, Bearden submitted a military order to the City stating that he was required to report to military duty from October 16, 2019, through October 30, 2019. Dkt. 18, ¶ 3; *id.* at 4. Bearden subsequently submitted another order stating that he was required to report for military duty for an additional nine months—from November 5, 2019, through August 27, 2020. *Id.* at 2, ¶ 3; 6.

The City charged the initial period of Bearden's absence to his 21 days of paid military leave. Dkt. 17 at 3, ¶ 8. After Bearden exhausted his military leave, he utilized other accrued leave, which he exhausted in February 2020. *Id.*

On February 19, 2020, the City's human resources specialist e-mailed Bearden, stating: "We wanted to reach out and let you know that as of 02/13/2020, we have put you on 'Leave without pay status', as your Vacation and Kelly time have both been exhausted." Dkt. 18 at 10. That day, Bearden responded, "Perfect. Thank you very much for reaching out." *Id.* In July 2020, Bearden submitted another order to the City

1    indicating that he would continue on military duty after August 27, 2020, for an

2    additional 273 days. Dkt. 18 at 2, ¶ 3; 8.

3          On October 27, 2020, Bearden e-mailed the City's new fire chief, Mike Thuirer,

4    requesting payment for 21 days of military leave beginning October 1, 2020, pursuant to

5    RCW 38.40.060. *Id.* at 12. The City's human resources specialist responded to Bearden,

6    informing him that, under RCW 38.40.060(4)(a),[2] public employees are entitled paid

7    military leave only for days that they are scheduled to work. *Id.* at 14–15. She explained

8    that Bearden was not entitled to paid military leave because he was on a "Military Leave

9    of Absence, effective November 5, 2019, and ha[d] no scheduled work days." *Id*. at 15.

10   As a result, Bearden was not charged any paid military leave following September 30,

11   2020.

12         Bearden sued the City alleging six violations of, and a claim for liquidated

13   damages under, the Unformed Services Employment and Reemployment Rights Acts

14   ("USERRA"), 38 U.S.C. § 4301 *et seq*. Dkt. 1 at 5–7. He subsequently amended his

15   complaint, adding the City's mayor, Crystal Dingler,[3] as a defendant and adding a claim

16   that Defendants violated the Washington Law Against Discrimination ("WLAD"), RCW

17   Ch. 49.60. Dkt. 23 at 2, 10.

18

19

20         [2] This statutory provision states: "The officer or employee shall be charged military leave
     only for days that he or she is scheduled to work for the state or the county, city, or other
21   political subdivision." RCW 38.40.060(4)(a).

           [3] Crystal Dingler subsequently died, and Defendants substituted Dean Dingler into this
22   action as the personal representative of her estate. *See* Dkts. 33, 41, 43.

The primary basis for Bearden's USERRA claims appears to be the City's refusal to charge him paid military leave under RCW 38.40.060 both on March 7, 2018, and for 21 days between October 1, 2020, and September 30, 2021. Indeed, in counts 1, 2, 4, and 5, Bearden claims that Defendants violated various provisions of USERRA that prohibit employers from denying employees in the uniformed services certain rights and benefits to which they are legally entitled.[4] In count 3, Bearden claims that Defendants violated 38 U.S.C. § 4311(b)—a statute prohibiting employers from discriminating against or taking adverse employment actions against those who seek to enforce rights protected under USERRA—by taking adverse employment actions against him and by constructively discharging him.[5] *Id.* at 9. And in count 6, Bearden claims that the City violated 38 U.S.C. § 4318—a statute regarding employee pension benefit plans—by maintaining a

---

[4] In particular, in count 1, Bearden claims that Defendants violated 38 U.S.C. § 4302(b)—a statute stating that USERRA supersedes any state policy that reduces, limits, or eliminates any right or benefit provided by USERRA—by imposing requirements in contravention of USERRA. Dkt. 23 at 8.

In count 2, Bearden claims that Defendants violated 38 U.S.C. § 4311(a)—a statute that prohibits employers from denying members in the uniformed services employment benefits because of such membership—by both denying him pay and benefits and imposing certain prerequisites to benefits based on his membership in the uniformed services. *Id.* at 8–9.

In count 4, Bearden claims that Defendants violated 38 U.S.C. § 4316(a), (b)—which imposes requirements regarding both seniority- and non-seniority-based benefits—by denying him rights and benefits that are both determined by seniority and not determined by seniority. *Id.* at 9.

And in count 5, Bearden claims that Defendants violated 38 U.S.C. § 4316(d) and 20 C.F.R. § 1002.153(a)—both of which authorize employees in the military service to use accrued paid leave when their employment is interrupted by a period of service—by denying Bearden paid leave that he accrued under RCW 38.40.060. *Id.* at 9.

[5] Bearden also alleges, in count 2, that Defendants constructively discharged him in violation of 38 U.S.C. § 4311(a). *Id.* at 8.

retirement plan that imposes requirements on members of the uniformed services beyond those required or permitted by USERRA. *Id.*

Regarding WLAD, Bearden claims in count 7 that Defendants "violated [his] WLAD-guaranteed protection from military related employment discrimination." *Id.* at 10.

The first motion for summary judgment, Dkt. 15, is directed at Bearden's USERRA claims. Defendants contend that Bearden was not entitled to paid military leave for March 7, 2018, because he did not substantiate his request with documentation indicating that he was required to report for military duty on that day. *Id.* at 10. Defendants further argue that Bearden was not entitled to 21 days of paid military leave between October 1, 2020, and September 30, 2021, because he was not scheduled to work any day during that period. *Id.* at 10–11. Defendants also assert that Bearden's discrimination claim under USERRA fails because he cannot establish that he has experienced an adverse employment action. *Id.* at 14. And Defendants contend that, under state law, Bearden—not the City—was required to take steps to obtain retirement system service credit from the Department of Retirement Systems. *Id.* at 7–8.

In response, Bearden does not address whether he was entitled to paid military leave for March 7, 2018, or whether the City failed to take steps to obtain retirement system service credit for the month of February 2014. *See* Dkt. 20. Instead, he claims that he was entitled to 21 days of paid military leave between October 1, 2020, and September 30, 2021, under RCW 38.40.060 regardless of whether he was actually scheduled to work any day during that period. *Id.* at 20–23. He further contends that, by requiring him to be

1   scheduled to work to qualify for paid military leave under RCW 38.40.060, the City

2   violated 20 C.F.R. § 1002.149, which provides that entitlement to non-seniority rights

3   and benefits is not dependent on how the employer characterizes the employee's status

4   during a period of military service. *Id.* at 20. Bearden also argues that the City violated 38

5   U.S.C. § 4316(d)—a statute prohibiting employers from requiring a person on military

6   service to use vacation leave—by charging his absence on March 7, 2018, to his non-

7   military accrued leave.[6] *Id.* at 18 n.5.

8          He also asserts that a fact issue exists to support his claims of discrimination and

9   constructive discharge under USERRA. *Id.* at 14–15. In support of this argument,

10  Bearden cites to a declaration of Bathke that describes an apparent conspiracy, involving

11  Mayor Dingler, several firefighters, and other City employees, to terminate Bearden's

12  employment with the City. Specifically, Bathke states that Mayor Dingler informed him

13  that she was getting pressure from several firefighters at the department "to find a way to

14  discipline and terminate" Bearden because "his time away for military duties . . . was

15  limiting their ability to select time off." Dkt. 20-2, Ex. A, ¶ 7. Bathke also states that

16  Mayor Dingler directed him to "require advanced written documentation of military leave

17  orders from Lt[.] Bearden in hopes he would resign his employment or . . . Dingler could

18  terminate him for insubordination." *Id.* ¶ 8. Furthermore, according to Bathke, several

19  _____

20          [6] Bearden also asserts that the Court should decline to rule on the City's motion for
    summary judgment, arguing that it is premature. *Id.* at 9. However, more than a year has passed
21  since Bearden filed his response to this motion. During this period, the Court stayed the action
    while Bearden was on active-duty military service. Dkt. 35. Bearden has since filed a notice of
    release from active duty wherein he requests the Court to rule on the motions for summary
22  judgment. Dkt. 45. Accordingly, the Court properly rules on these motions.

1   firefighters informed him that "they were going to make Travis Bearden's life at the fire

2   station 'Living Hell' and they were going to bully [Bearden] to resign as Union

3   President." *Id.* ¶ 9. Additionally, Bathke makes various statements indicating that Mayor

4   Dingler and several firefighters at the department disliked Bearden and that they, along

5   with the City's attorney and human resources specialist, were working to gather

6   unfavorable personal information on Bearden so that he could be fired. *See id.* ¶¶ 10–15.

7   Bathke states that, for these reasons, he "believe[s] Travis has been discriminated against

8   at the City of Ocean Shores Fire Department for his military service and is likely to

9   continue to be harassed and discriminated against by the city staff and fire department

10   members." *Id.* ¶ 16.

11       Defendants reply that Bearden's constructive discharge claim fails because

12   Bearden has not quit his job and, instead, intends to return to work following his military

13   service. Dkt. 24 at 11.

14       The second summary judgment motion, Dkt. 28, is directed at Bearden's WLAD

15   claims. Defendants assert that the WLAD claim must be dismissed because Bearden

16   failed to comply with the state tort claim filing requirements enumerated in RCW Ch.

17   4.96. Dkt. 28 at 5. Bearden responds that dismissal of his WLAD claim is inappropriate

18   because he substantially complied with the requirements in RCW 4.96.020 when he filed

19   his motion to amend the complaint. Dkt. 36 at 4. Alternatively, Bearden asserts that he

20   complied with the state tort claim filing requirements by filing a tort claim form after he

21   filed the amended complaint. *See id.* at 8. Defendants reply that neither of these efforts

22   satisfied the "pre-suit claim filing requirement." Dkt. 37 at 2.

# II.   DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without

1    merely relying on allegations in the pleadings, that there remain genuine factual issues.

2    *Anderson*, 477 U.S. at 248.

3    **B.    Retirement System Service Credit for February 2014**

4          Bearden claims that the City violated 38 U.S.C. § 4318 by maintaining a

5    retirement plan that imposes requirements on members of the uniformed services beyond

6    those required or permitted by USERRA. Dkt. 23 at 9. Defendants argue that, contrary to

7    Bearden's belief, the City is not responsible for obtaining Bearden's retirement system

8    service credit for February 2014 because Bearden—not the City—was required to take

9    steps to obtain this credit. Dkt. 15 at 7–8. Defendants also contend that the requirement

10   that Bearden himself obtain this credit does not violate 38 U.S.C. § 4318. *Id.* at 8–9.

11   Bearden does not address either of these arguments. *See* Dkt. 20.

12         Washington firefighters' retirement system plans are governed by the Washington

13   Law Enforcement Officers' and Firefighters' Retirement System Act, RCW Ch. 41.26.

14   This Act addresses the process through which members of such retirement system plans

15   obtain retirement system service credit. When a member "leaves the employ of an

16   employer to enter the uniformed services," he or she "shall be entitled to retirement

17   system service credit for up to five years of military service." RCW 41.26.520(7). To

18   qualify for such service credit, the member must not only apply for reemployment within

19   the time allotted by statue, but he or she must also take affirmative steps to obtain service

20   credit. *See* RCW 41.26.520(7)(a).

21         "The member" may do this by either "mak[ing] the employee contributions

22   required under RCW 41.45.060, 41.45.061, and 41.45.067 within five years of

1   resumption of service or prior to retirement, whichever comes sooner," "pay[ing] the

2   amount required under RCW 41.50.165(2)" if he or she does so "[p]rior to retirement and

3   not within ninety days of the member's honorable discharge or five years of resumption

4   of service," or "provid[ing] to the director [of the department of retirement systems]

5   proof that the member's interruptive military service was during a period of war as

6   defined in RCW 41.04.005." RCW 41.26.520(7)(a)(ii)–(iv).

7           In other words, the member—not his or her employer—is required to take steps to

8   obtain retirement system service credit from the Department of Retirement Systems. As a

9   result, it was Bearden's responsibility—not the City's—to obtain retirement system

10  service credit for the month of February 2014.

11          Furthermore, the statutory requirement that Bearden take affirmative steps to

12  obtain retirement system service credit does not violate USERRA. Indeed, USERRA

13  provides that employees are entitled to accrued pension benefits that are contingent upon

14  employee contributions only to the extent that the employee makes payment to his or her

15  pension plan:

16          A person reemployed under this chapter shall be entitled to accrued benefits
        pursuant to subsection (a)[7] that are contingent on the making of, or derived

17
        _____

18          [7] Subsection (a) generally provides:

19          [I]n the case of a right provided pursuant to an employee pension benefit plan
        (including those described in sections 3(2) and 3(33) of the Employee Retirement
        Income Security Act of 1974) or a right provided under any Federal or State law
20      governing pension benefits for governmental employees, the right to pension
        benefits of a person reemployed under this chapter shall be determined under this
21      section.

22  38 U.S.C. § 4318(a)(1)(A). Bearden's right to retirement system service credit falls within the
    ambit of this section.

1
2

from, employee contributions or elective deferrals (as defined in section 402(g)(3) of the Internal Revenue Code of 1986) *only to the extent the person makes payment to the plan with respect to such contributions or deferrals.*

3

38 U.S.C. § 4318(b)(2) (emphasis added).

4
5
6
7

Bearden does not present any evidence that he contributed to his retirement plan for the month of February 2014. Therefore, the state statutory requirement that he make such a contribution to receive retirement system service credit does not violate USERRA.

8

Accordingly, Defendants' motion for summary judgment on this claim is GRANTED and the claim is DISMISSED with prejudice.

9

**C.    Paid Military Leave for March 7, 2018**

10
11
12
13
14
15
16
17

Bearden claims that Defendants violated various provisions of USERRA by denying him a benefit—specifically, paid military leave on March 7, 2018—to which he was legally entitled under state law. *See* Dkt. 23 at 8–9. Defendants assert that Bearden was not entitled to paid military leave for March 7, 2018, because he did not provide the City with any documentation indicating that he was required to report for military duty that day. Dkt. 15 at 10. Bearden does not respond to this argument. *See* Dkt. 20. Instead, he claims that Defendants violated USERRA by charging his absence on March 7, 2018, to his non-military accrued leave against his consent. *See id.* at 18 n.5.

18
19
20

In Washington, public employees are entitled to 21 days of military leave per year, beginning October 1 and ending the following September 30. RCW 38.40.060(1). As this statute makes clear, such leave applies to only *required* military duty, training, or drills:

21
22

Every officer and employee of the state or of any county, city, or other political subdivision thereof who is a member of the Washington national

guard or of the army, navy, air force, coast guard, or marine corps reserve of the United States, or of any organized reserve or armed forces of the United States shall be entitled to and shall be granted military leave of absence from such employment for a period not exceeding twenty-one days during each year beginning October 1st and ending the following September 30th in order that the person may report for *required* military duty, training, or drills including those in the national guard under Title 10 U.S.C., Title 32 U.S.C., or state active status.

*Id.* (emphasis added).

During periods of required military leave, employees "shall receive from the state, or the county, city, or other political subdivision, his or her normal pay." RCW 38.40.060(3).

In response to Bearden's request for paid military leave on March 7, 2018, Bathke directed Bearden to provide the City with military orders to reflect that he was required to report for military duty, training, or drills on that day. Dkt. 17 at 32. Bearden responded that he "did not have orders" and requested Bathke to cite to a "state or federal ruling" requiring orders to be produced. *Id.* at 34. Bathke responded that, under RCW 38.40.060, military leave applied to only *required* military duty, training, or drills. *Id.* at 36. Bathke also informed Bearden that he could submit "a letter or other documentation from [his] commanding officer to establish that [his] absence on March 7 was for 'required military duty, training, or drills.'" *Id.* Bearden never provided the City with any such documentation. *Id.* at 3, ¶ 7.

Because military leave under RCW 38.40.060(1) applies to only required military duty, training, or drills, Bearden was required substantiate his request for paid leave with some documentation indicating that he was required to report for military duty. He did

1    not do so. Furthermore, Bearden does not explain how any of the USERRA statutes or

2    regulations that serve as a basis for his claims nullify the state statutory requirement that

3    he substantiate his request for paid military leave under RCW 38.40.060.

4          Instead, he asserts that Defendants violated 38 U.S.C. § 4316(d) by charging his

5    absence on March 7, 2018, to his non-military accrued leave against his consent. *See* Dkt.

6    20 at 18 n.5. The cited statute states, in pertinent part, that "[n]o employer may *require*

7    any [person whose employment with an employer is interrupted by a period of service in

8    the uniformed services] to use vacation, annual, or similar leave during such period." 38

9    U.S.C. § 4316(d) (emphasis added). In support of his argument that Defendants violated

10   this statute, Bearden relies on the following statement made by the City's finance director

11   in a declaration: "Ultimately plaintiff did not provide documentation to support his

12   request for military leave on March 7, 2018, so this day was charged to his accrued

13   leave." Dkt. 17 at 3, ¶ 7. This statement does not provide any indication that Defendants

14   *required* Bearden to use non-military leave for this day. Rather, it provides merely that

15   Bearden's absence on March 7, 2018, was charged to his non-military accrued leave. This

16   is insufficient to survive summary judgment on this claim.

17         Accordingly, to the extent that Bearden claims that Defendants violated USERRA

18   by not charging him paid military leave on March 7, 2018, and, instead, by charging this

19   day to his other accrued leave, Defendants' motion for summary judgment is GRANTED

20   and these claims are DISMISSED with prejudice.

21

22

**D.      Paid Military Leave between October 1, 2020, and September 30, 2021**

Bearden claims that Defendants violated various provisions of USERRA by denying him a benefit to which he was owed under state law—namely, 21 days of paid military leave between October 1, 2020, and September 30, 2021, pursuant to RCW 38.40.060. Dkt. 23 at 8–9. Defendants contend that Bearden is not entitled to 21 days of paid military leave because he was not scheduled to work for the City for any day during that period. Dkt. 15 at 10–11. Bearden does not dispute that he was not scheduled to work during that time. *See* Dkt. 20 at 20–23. Instead, he argues that RCW 38.40.060 does not require him to establish that he was, in fact, scheduled to work. *Id.*

As already explained, public employees in Washington are entitled to 21 days of paid military leave per year, beginning October 1 and ending the following September 30. *See* RCW 38.40.060(1), (2). Notably, however, public employees "shall be charged military leave *only for days that he or she is scheduled to work* for the state or the county, city, or other political subdivision." RCW 38.40.060(4)(a) (emphasis added).

In late 2019, Bearden submitted an order to the City informing it that he would be on military duty for more than nine months—from November 5, 2019, through August 27, 2020. Dkt. 18 at 2, ¶ 3; 6. Bearden exhausted both his paid military leave and other accrued leave in February 2020. Dkt. 17 at 3, ¶ 8. That month, the City's human resources specialist informed Bearden that he was placed on leave without pay status because he had exhausted all his accrued leave. Dkt. 18 at 10. In July 2020, Bearden submitted another order to the City providing that he would remain on military duty for

1   an additional 273 days, and thus that he would not return to work in August 2020. *Id.* at

2   2, ¶ 3; 8.

3          In late October 2020, while he was still on extended military leave, Bearden

4   requested payment for 21 days of military leave beginning October 1, 2020, pursuant to

5   RCW 38.40.060. *Id.* at 12. The City declined to pay him for those days, informing him

6   that he was not entitled to paid military leave because he was not scheduled to work any

7   days beginning October 1, 2020. *Id.* at 14–15.

8          Defendants correctly assert that Bearden was not entitled to 21 days of paid

9   military leave between October 1, 2020, and September 30, 2021. *See* Dkt. 15 at 10–13.

10  RCW 38.40.060(4)(a) expressly provides that a public employee "shall be charged

11  military leave only for days that he or she *is scheduled to work* for the state or the county,

12  city, or other political subdivision." (emphasis added). Because Bearden was not

13  scheduled to work any day that he was on extended military leave during the period at

14  issue, he is not entitled to paid leave under this statute.

15         Nor was the City required to schedule Bearden to work while he was on extended

16  military leave. Indeed, the process by which persons in the uniformed services become

17  eligible to return to a position of employment is governed by 38 U.S.C. § 4312.

18  Subsection (a) of this statute states that "any person whose absence from a position of

19  employment is necessitated by reason of service in the uniformed services shall be

20  entitled to reemployment rights and benefits and other employment benefits of this

21  chapter if," among other things, "the person reports to, or submits an application for

22

1  reemployment to, such employer in accordance with the provisions of subsection (e)." 38

2  U.S.C. § 4312(a)(3). Subsection (e) provides, in pertinent part:

> [A] person referred to in subsection (a) shall, upon the completion of a
> period of service in the uniformed services, notify the employer referred to
> in such subsection of the person's intent to return to a position of
> employment with such employer as follows:
> . . .
> (D) In the case of a person whose period of service in the uniformed
> services was for more than 180 days, by submitting an application for
> reemployment with the employer not later than 90 days after the
> completion of the period of service.

38 U.S.C. § 4312(e)(1)(D).

Bearden's extended military leave far exceeded 180 days. As such, until Bearden

submitted "an application for reemployment" within the time specified by statute, the

City was not required to schedule Bearden to work for any days from October 1, 2020,

through September 30, 2021. *Id.* He did not do so. Therefore, the City was not required to

schedule him to work during this period.

Bearden asks the Court to read RCW 38.40.060(4)(a) as stating that "an employer

may not charge leave for days the employee *would not regularly be* scheduled to work."

Dkt. 20 at 20 (emphasis added). Therefore, Bearden asserts that the City should have

charged him military leave days based on the schedule that he worked the year prior to

his deployment. *Id.* at 22. Bearden also asserts that his reading of RCW 38.40.060(4)(a)

would avoid an interpretation of the statute that would lead to absurd results. *Id.* at 21.

But Bearden's interpretation of the statute would require the Court to

impermissibly add words to an otherwise unambiguous statute. *See State v. Delgado*, 148

Wn.2d 723, 727 (2003) ("We cannot add words or clauses to an unambiguous statute

1    when the legislature has chosen not to include that language."). Moreover, the Court's

2    reading of RCW 38.40.060(4)(a) does not lead to absurd results. Under its plain

3    language, this statute is intended to compensate those who miss scheduled work because

4    they engage in periodic military leave. Because Bearden had been on an extended

5    military leave of absence since November 5, 2019, he was not scheduled to work any day

6    between October 1, 2020, and September 30, 2021. Dkt. 18 at 15. The City was not

7    required to schedule Bearden for days that he was unable to work so that he could be paid

8    for not working on those days.

9         Bearden also asserts that the Court should disregard the state statutory requirement

10   that he be scheduled to work to receive paid military leave, citing 20 C.F.R. § 1002.149.

11   Dkt. 20 at 19–20. This regulation provides, when an employee is on leave to perform

12   military service, "the employee is entitled to the non-seniority rights and benefits

13   generally provided by the employer to other employees with similar seniority, status, and

14   pay that are on furlough or leave of absence" and that "[e]ntitlement to the non-seniority

15   rights and benefits is not dependent on how the employer characterizes the employee's

16   status during a period of service." 20 C.F.R. § 1002.149. This regulation does not nullify

17   the state statutory requirement that an employee be scheduled to work to be entitled to

18   paid military leave.

19        Furthermore, Bearden does not explain how any other USERRA statute or

20   regulation that serves as a basis for his federal claims is violated by this statutory

21   requirement.

22

1    Accordingly, to the extent that the Bearden claims that Defendants violated

2    USERRA by not charging him 21 days of paid military leave between October 1, 2020,

3    and September 30, 2021, Defendants' motion for summary judgment on these claims is

4    GRANTED and they are DISMISSED with prejudice.

5    **E.    Discrimination under USERRA**

6    Bearden claims that Defendants discriminated against him in violation of 38

7    U.S.C. § 4311(b) by taking adverse employment actions against him following his

8    complaints that the City violated his rights under USERRA. Dkt. 23 at 9. Defendants

9    assert that Bearden's discrimination claim fails because he never experienced an adverse

10   employment action. Dkt. 15 at 13–14. In response, Bearden does not identify a single

11   adverse employment action that he has endured. *See* Dkt. 20 at 14–15. Instead, he simply

12   argues that a genuine issue of material fact exists with regard to a separate element of

13   discrimination claims under USERRA—namely, whether his protected status was a

14   *motivating factor* in an adverse employment action. *Id.* at 14.

15   "USERRA 'prohibit[s] discrimination against persons because of their service in

16   the uniformed services.'" *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002)

17   (quoting *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 311 (4th Cir. 2001)). To establish a

18   discrimination claim under USERRA, "the employee first has the burden of showing, by

19   a preponderance of the evidence, that his or her protected status was 'a substantial or

20   motivating factor in the adverse [employment] action.'" *Id.* at 899 (quoting *N.L.R.B. v.*

21   *Transp. Mgmt. Corp.*, 462 U.S. 393, 401 (1983)). "[T]he employer may then avoid

22

1   liability only by showing, as an affirmative defense, that the employer would have taken

2   the same action without regard to the employee's protected status." *Id.*

3       "Although the Ninth Circuit has yet to weigh in on this issue, a number of other

4   courts have concluded that a USERRA plaintiff must establish he or she suffered a

5   'materially adverse' employment action to sustain a discrimination or retaliation claim

6   under USERRA." *Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254, 1271 (W.D. Wash.

7   2020) (collecting cases). "A materially adverse action is one that significantly alters the

8   terms and conditions of an employee's job, such as termination, demotion accompanied

9   by a decrease in pay, or a material loss of benefits or responsibilities." *Id.* (internal

10  quotation marks omitted).

11      Bearden does not identify any materially adverse employment action that he has

12  endured. Instead, he cites generally to a declaration of Bathke to argue that "the record

13  evidence shows clear evidence of Defendants [sic] unlawful motivation." Dkt. 20 at 14.

14  This is insufficient to establish a genuine issue of material fact on a USERRA

15  discrimination claim. *See Leisek*, 278 F.3d at 899. Bearden also argues that "Chief

16  Bathke testified that he believes that based on his direct observations, '[Bearden] has

17  been discriminated against at the City of Ocean Shores Fire Department for his military

18  service and is likely to continue to be harassed and discriminated against by the city staff

19  and fire department members.'" Dkt. 20 at 14–15 (quoting Dkt. 20-2, ¶ 16). However,

20  "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to

21

22

1  raise genuine issues of fact and defeat summary judgment."[8] *Soremekun v. Thrifty*

2  *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In any event, Bathke's declaration does

3  not provide any evidence that Bearden in fact suffered an adverse employment action.

4          Accordingly, Defendants' motion for summary judgment on this claim is

5  GRANTED and the claim is DISMISSED with prejudice.

6  **F.    Constructive Discharge under USERRA**

7          Bearden claims that Defendants violated 38 U.S.C. § 4311 by engaging in conduct

8  leading to his constructive discharge. Dkt. 23 at 8–9. Defendants assert that Bearden fails

9  to raise a fact issue on his constructive discharge claim because he does not present any

10  evidence that he quit his job with the City. Dkt. 24 at 11. Bearden responds that a fact

11  issue exists on this claim because Defendants engaged "continuous efforts to push [him]

12  out of employment and deny him paid leave, that he was 'hated', 'disliked' for his

13  military service obligations, and that Defendants determined to make his life 'a living

14  hell' on their way to terminated [sic] his employment." Dkt. 20 at 15.

15          Under USERRA, "[c]onstructive discharge occurs when, 'looking at the totality of

16  the circumstances, a reasonable person in the employee's position would have felt that he

17  was forced to quit because of intolerable and discriminatory working conditions.'"

18  ─────────────────────

19      [8] Defendants move to strike "any references in Mr. Bathke's declaration as to predictions of future actions as being baseless and lacking foundation." Dkt. 24 at 10. Although such statements are insufficient to establish a genuine issue of material fact, the Court declines to

20  strike them. Therefore, this motion to strike is DENIED.

21      Defendants also move to strike "any references to statements concerning communications with counsel as any such communications between a fire chief and counsel are privileged and Bathke as former fire chief has no authority to waive that privilege." *Id.* Defendants do not

22  identify the statements pertaining to this motion to strike and it is also DENIED.

1   *Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir. 2007) (quoting *Watson v.*

2   *Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987)) (internal quotation marks and

3   alteration omitted). Bearden presents no evidence that he quit his job with the City. To

4   the contrary, Bearden testified at his deposition that he intends to return to work for the

5   City when he is no longer on military duty:

6       [Defendants' Attorney:]     What is your intention, for purposes of
        employment, when your post deployment terminal leave ends?
7       [Bearden:]     Return to Ocean Shores.

8   Dkt. 25 at 5.

9       Because Bearden does not present any evidence that he quit his job, his

10  constructive discharge claim fails. Accordingly, Defendants' motion for summary

11  judgment on this claim is GRANTED and the claim is DISMISSED with prejudice.

12  **G.    Discrimination and Hostile Work Environment under WLAD**

13      Bearden claims that Defendants violated WLAD by both discriminating against

14  and subjecting him to a hostile work environment because of his membership in the

15  uniformed services.[9] Dkt. 23 at 10; Dkt. 20 at 15–17. Defendants contend that Bearden is

16  not entitled to advance these claims because he did not comply with the state tort claim

17  filing requirements enumerated in RCW Ch. 4.96. Dkt. 28 at 5. As such, they request that

18

19      [9] Defendants also claim that Bearden fails to raise a fact issue with regard to a hostile
20  work environment claim under USERRA. *See* Dkt. 15 at 14 ("To the extent that plaintiff
    contends that he was subjected to a 'hostile work environment' based on his military status in
    violation of USERRA, his claims should be dismissed."). In response, however, Bearden does
21  not raise any argument about a hostile work environment claim under USERRA. *See* Dkt. 20.
    Instead, the only argument that he advances concerning a hostile work environment is made
22  under WLAD. *See id.* 15–17. Therefore, the Court addresses this claim solely under WLAD.

1    the Court dismiss these claims without prejudice. Dkt. 37 at 5. Bearden responds that

2    dismissal of these claims is inappropriate because he substantially complied with the

3    requirements in RCW 4.96.020. Dkt. 36 at 4–8.

4         In Washington, before a plaintiff sues a governmental entity for tortious conduct,

5    the plaintiff must file a "claim for damages." [10] RCW 4.96.010(1). Notably, "[f]iling a

6    claim for damages within the time allowed by law shall be a condition precedent to the

7    commencement of any action claiming damages." *Id.* The chapter's next section, RCW

8    4.96.020, describes various requirements pertaining to the content of claim forms and the

9    procedure to be followed for filing such forms.

10        Bearden asserts that he substantially complied with the requirements of RCW

11   4.96.020 because "[t]he Amended Complaint served with the Motion to Amend on July

12   27, 2021, includes all of the requirements set forth in RCW § 4.96.020." Dkt. 36 at 5–6.

13   However, this argument disregards the requirement set forth in RCW 4.96.010(1) that the

14   filing of a claim form "be a *condition precedent* to the commencement of any action

15   claiming damages." (emphasis added). Indeed, "[t]he purpose of this claim is 'to allow

16   government entities time to investigate, evaluate, and settle claims' *before they are sued*."

17   *Renner v. City of Marysville*, 168 Wn.2d 540, 545 (2010) (en banc) (emphasis added)

18   (quoting *Medina v. Pub. Util. Dist. No. 1*, 147 Wn.2d 303, 310 (2002)). The motion to

19

20
_____

21        [10] This requirement extends to suits arising from the conduct of government employees
     for torts committed by the employee within the scope of his or her work for the government. *See
     Hanson v. Carmona*, 16 Wn. App. 2d 834, 840–41 (2021). Accordingly, Bearden was required to
22   file a claim for damages with regard to his claims that Mayor Dingler violated WLAD.

ORDER - 23

1   amend the complaint "commenced" Bearden's suit against Defendants with regard to the

2   WLAD claims. As such, it did not function as a claim form.

3         Bearden also contends that he satisfied the statutory claim form requirements by

4   filing a notice of tort claim on October 19, 2021. Dkt. 36 at 8. However, this was *after*

5   Bearden filed both his motion to amend and his amended complaint. *See* Dkts. 11, 23. As

6   such, it was untimely under RCW 4.96.010(1).

7         Where, as here, a party fails to comply with the statutory claim form requirements

8   in RCW Ch. 4.96, dismissal is appropriate. *See Lee v. Metro Parks Tacoma*, 183 Wn.

9   App. 961, 968–69 (2014). Accordingly, Defendants' motion for summary judgment on

10  Bearden's WLAD claims is GRANTED and those claims are DISMISSED without

11  prejudice.

12  ### III.   ORDER

13        Therefore, it is hereby **ORDERED** that Defendants' motions for summary

14  judgment, Dkts. 15, 28, are **GRANTED**. Bearden's USERRA claims are **DISMISSED**

15  **with prejudice** and his WLAD claims are **DISMISSED without prejudice**.

16        The Clerk shall enter a JUDGMENT and close the case.

17        Dated this 8th day of December, 2022.

18

19

20                                       BENJAMIN H. SETTLE
                                         United States District Judge

21

22