UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRAVIS BEARDEN,

Plaintiff,

v.

CITY OF OCEAN SHORES, et al.,

Defendants.

CASE NO. C21-5035 BHS

ORDER

THIS MATTER is before the Court on plaintiff Travis Bearden's motion for attorneys' fees, Dkt. 75, following the stipulated judgment on liability, prevailing party status, and Bearden's entitlement to USERRA reasonable attorneys' fees. Dkts. 72 and 73. The Court entered judgment in Bearden's favor in the amount of $207,322. Dkt. 74.

Bearden's attorneys—Thomas Jarrard, Joseph Barton, and John Tymczyszyn seek $1,099,205 in lodestar fees, based on a total of 1670 hours at current hourly rates ranging from $600 to $850:

| Name | Title | Admitted | Rate | Hours | Lodestar |
|---|---|---|---|---|---|
| Thomas Jarrard | Partner | 2007 | $700 | 917.9 | $ 641,900.00 |
| R. Joseph Barton | Partner | 2001 | $850 | 95.8 | $ 63,615.00 |
| John Tymczyszyn | Partner | 2013 | $600 | 656.0 | $ 393,690.00 |
| **TOTAL** | | | | 1669.7 | $1,099,205.00 |

Dkt. 75 at 8.

Ocean Shores asserts that the rates are higher than the attorneys charged at the time the bulk of the work was performed, and that the fee application reveals rampant overbilling, duplication of effort, inefficiency and excessive time spent on failed efforts. Dkt. 78 at 1. It proposes a significantly reduced fee award.

**A. Attorneys' Fee Standard**

The first step in determining a reasonable attorney's fee is to calculate the "lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010); *Scott Fetzer v. Weeks*, 114 Wn.2d 109 (1990); *Absher Constr. v. Kent Sch. Dist. No. 415*, 79 Wn. App. 841, 847 (1995).

The Ninth Circuit recently reiterated that, to determine the lodestar, courts calculate the prevailing market rate in the relevant community and then multiply it by the number of hours reasonably expended on the case. *United States ex rel. Thrower v. Academy Mortgage Corporation*, 172 F.4th 703, 707 (2026) (citing *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551 (simplified); *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024)). The benefit of the lodestar method is that it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Thrower*, 172 F.4th at 707 (citing *Perdue*, 559 U.S. at 552).

The Court should exclude overstaffed, redundant, or unnecessary time. *Hensley*, 461 U.S. at 434. The Court must also consider the extent of plaintiffs' success, as that is a "crucial factor" in determining an appropriate award. *Id.* at 440

**B. Reasonable Hourly Rate**

The Court determines reasonable hourly rates by looking to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). This usually involves an evaluation of the hourly rates of comparable attorneys in the forum district. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). The Court should also consider the experience, skill, and reputation of the attorney requesting fees. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

An attorney's reasonable hourly rate reflects primarily his or her skill and experience in the relevant community. *Bell*, 341 F.3d at 868. The Court's inquiry is, "what does a comparable attorney charge in the relevant community for similar work?" *Gates*, 987 F.2d at 1405; *Schwarz*, 73 F.3d 895 at 906.

Bearden contends his attorneys' requested rates are reasonable given their experience and skill and the fact they ultimately prevailed in a difficult case.

Ocean Shores points out that none of Bearden's three attorneys attest to having charged the requested rate in a given case, and asks the Court to apply the rates counsel charged during the early, active part of this case, not the rates they charge today. Based on counsel's fee applications in other cases four and five years ago, it asks the Court to award a reasonable hourly rate of $550 for Jarrard (his rate in 2023) and $400 for Tymczyszyn. Dkt. 78 at 17. It asserts that Bearden's fee application does not adequately

address his third attorney's October 2025 appearance or what tasks required Barton's counsel,[1] and asks the Court to exclude the roughly 100 hours he spent on the case as not reasonably necessary. Dkt. 78 at 16.

The Court agrees that the rates awarded should reflect the attorneys' actual rates at the time, even if they could reasonably have charged a higher rate, and even if their current rates are higher than they were when the work was actually performed. It will award Jarrad **$625** per hour, and John T. Law **$500** per hour. These rates are reasonable, are more than they were charging for similar work at the beginning of the case, and are consistent with the rates charged when most[2] of the work on this case was performed. They therefore represent an imprecise, "weighted average" over the course of the case.

**C. Reasonable number of hours**

The second step of the lodestar calculation involves another exercise of the Court's informed discretion: the number of hours "reasonably expended" on the litigation. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won,

[1] Attorney Barton appeared in this case in late 2025. Dkt. 57. Bearden has not explained Barton's involvement or otherwise defended his $63,615 fee as reasonable or necessary for the outcome achieved. As the City points out, Bearden's other attorneys are experienced in this area. Dkt. 78 at 16.

[2] This conclusion is based on the Court's review of the billing records and its own docket, which reflects that 50 of the docket entries prior to this motion (Dkt. 75) were made before 2023, and the case was on appeal for almost two years. Dkts. 50, 51, 52, 53, 54, 55. After remand, the only litigation involved Bearden's largely unsuccessful summary judgment motion, his unnecessary substitution, and this motion's fees.

and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

With that in mind, however, in determining the reasonable number of hours, the Court must exclude those hours that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (emphasis added). This factor requires a review of billing records, and an informed estimate of how much any given task might reasonably take. The Court also considers the opposition's review of the prevailing party's attorneys' timekeeping records, and its own observations throughout the litigation.

Bearden contends that all the hours his attorneys spent on the case were reasonable. He asserts that he obtained "excellent results" with a "complete vindication of his rights under USERRA," and prevailing party status. Dkt. 75 at 5. He emphasizes the case's lengthy procedural history, including summary judgment dismissal, the Ninth Circuit's certified question to the Washington Supreme Court, and an ultimately successful appeal and remand. *Id*. Bearden claims his attorneys were diligent and efficient, successfully litigating in at least six areas:

> (1) conducting a lengthy pre-filing investigation;
> (2) carrying out substantial discovery and motion practice as necessary to develop a clear record for appeals;
> (3) preparing and filing extensive briefing and record excerpts for appeals and a certified question;
> (4) rehearsals and arguing those appeals;
> (5) carefully reviewing and analyzing at each stage both to understand the likelihood of their ultimate success on the merits and gauge the likelihood of a negotiated resolution; and

> (6) successfully retaining substitutes for deceased defendant, and negotiating the final stipulation and resolution of this matter, thereby avoiding the costs, expenses and attorneys fees associated with trial.

Dkt. 75 at 6.

Bearden's fee application is supported by the declarations of two attorneys and two retired judges opining that the rates and the hours spent were reasonable. Each focuses primarily on the rates requested. Dkts. 75-3, -4, -6, and -7. They opine in largely conclusory fashion that the hours Bearden's attorneys spent were "reasonable." *Id*. But none address the fact that Bearden did not prevail on the bulk of his claims, that the billing records disclose duplicated effort, or the fact that much of the time spent was not ultimately productive.

Like Bearden, they also assert that the hours spent were the result of the quality of opposing counsel, and an "aggressive" defense strategy. *See* Dkt. 75-4 at 5 ("[T]he amount of time spent on this case while representing Mr. Bearden over the course of this litigation matter, against the apparent aggressive and competent nature of defense counsel and its law firm, is more than justified and reasonable, especially when much of the time was expended based on an overzealous defense team.").

The docket does not reflect an overzealous or unreasonably aggressive defense. The City promptly moved for summary judgment on Bearden's USERRA claim, Dkt. 15, and, when he amended his complaint to assert them, his state law claims, Dkt. 28. The Court granted those motions, Dkt. 48, and Bearden appealed. When (only) the paid military leave claim was remanded, years later, Beard sought summary judgment. The Court denied most of that motion, and the case settled. Dkts. 61, 71, and 72.

Furthermore, Ocean Shores' counsel argues and demonstrates that she spent about one third of the time on the case that Bearden's attorneys did, at a lower hourly rate than they seek. Dkt. 78-2 at 164–166. The Court is not persuaded that the nature of the "competent" but "aggressive" defense she provided explains or warrants the hours Bearden's three attorneys spent on the case.

Ocean Shores' response emphasizes it made a "full value offer" to settle this case, backed by a Rule 68 offer of judgment, in August 2021. Dkt. 78 at 1. It offered Bearden $21,010—more than the 21 days of paid military leave he then sought—plus reasonable fees and costs, whether or not he ever returned to work for Ocean Shores. *See* Dkt. 78-2 at 3–4. Bearden informed the City of his view that USERRA "preempted" Rule 68 but did not otherwise respond[3] to the offer. *Id*. The attorney opinions upon which Bearden relies do not address this fact, either.

Ocean Shores contends and demonstrates Bearden "inexplicably rejected" this offer and instead amended his complaint to add Mayor Dingler as a defendant, asserting state law WLAD, harassment, discrimination, retaliation and constructive discharge claims. It correctly contends that Bearden abandoned these claims on appeal in 2022, and that he did not prevail on them. It argues that Bearden's decisions led to years of fruitless litigation, and that the fees Bearden incurred pursuing this case after the City's August 2021 offer were unreasonably incurred and should not be awarded. Dkt. 78 at 1.

[3] Bearden's Reply ignores the City's revised offer to pay all that was then owed, plus fees and costs, not contingent on Bearden's resignation. *See* Dkt. 78-2 at 3–4. It relies instead on the City's *prior* offer, which included Bearden's resignation. Dkt. 81 at 3. It again contends only that that USERRA preempts CR 68. *Id*.

The City also argues that Bearden's fee application discloses significant overlap and redundancy, an improbable claim for hours spent on a deposition and other discrepancies and inefficiencies. *See generally* Dkt. 78 at 9–16. It argues that roughly 54 hours spent on the dismissed and abandoned-on-appeal state law claims in Bearden's amended complaint were not reasonable because he failed to file the clearly required pre-claim tort notice. *Id*. at 10. It points to an additional 22 hours the attorneys spent replacing Dingler's estate with the personal representative of her husband's estate when he passed away in 2026, years after Bearden had abandoned his procedurally barred claims against Dingler. Dkt. 78 at 13. He did not prevail on these claims, and they were not even in the case during the second substitution.

The City also contends and appears to demonstrate that Bearden's attorneys spent 20 hours reviewing their own ECF filings, and 110 hours reviewing intra-counsel emails. Dkt. 78 at 11 (citing *Hanson v. Kitsap* County, No.13-cv-05388-RJB, 2015 WL 3965829 at *5 ("In the court's opinion, it is unreasonable to expect the defense to pay for three lawyers for Plaintiff. The case was simply not that complex. The court is not critical of the choice to use three lawyers, but that choice was not reasonably necessary to a fair presentation of Plaintiff's case.")). It also points out that two attorneys attended Bearden's three-hour deposition, and one of them billed five hours for it. Dkt. 78 at 14.

In short, the City argues and demonstrates that Bearden's fee request is excessive. It asks the Court to reduce the fee to a maximum of $414,500, if it awards any fees for work performed after its Rule 68 offer of judgment. Dkt. 78 at 18.

The Court cannot conclude that the City's unaccepted August 2021 Rule 68 offer makes it the prevailing party for purposes of Bearden's attorneys' fee claim. The Court also rejects the suggestion that all fees incurred after that offer expired were necessarily unreasonable. But the fact that Bearden rejected an offer to pay all he was then owed, plus fees and costs, whether or not he returned as an employee, does inform the Court's evaluation of the reasonableness of the apparently significant fees he incurred after that date.

The case was delayed by Bearden's military service, and by its route through the Ninth Circuit and the Washington Supreme Court on one specific, novel issue. The Court recognizes that that portion of the case required an unusual amount of legal analysis and briefing, and that Bearden ultimately prevailed[4] on that issue. But discovery closed in 2021, Dkt. 59 at 3, and the factual context of the case was not complicated. In the Court's view, the fees incurred on Bearden's "Dingler claims," including discovery, motions practice, and substituting parties as late as this year,[5] was not reasonable. Bearden did not prevail on any of those claims; they were dismissed in December 2022 and not appealed. Dkt. 48.

Indeed, the only remaining factual question was whether Bearden "remained a public employee" after late 2021. The Court described its concerns about the evidence on this point in its prior Order denying Bearden's motion for summary judgment. Dkt. 71.

---

[4] The City points out that the Washington Supreme Court denied Bearden's request for fees on appeal. Dkt. 78 at 3. The Ninth Circuit similarly did not award costs or fees. Dkt. 54 at 2.

[5] Dkts. 66, 68, 69.

The case settled shortly thereafter, but it remains true that there is no evidence Bearden remained a City employee after at least October 2021. *See* Dkt. 71 at 9. His fee request on his "paid military leave" claim when there is scant evidence he was actually on military leave after 2021 undermines the claim that the hundreds of hours subsequently spent on this case were reasonable. "Remaining a public employee" is a prerequisite for entitlement to the 21 days of yearly paid military leave at issue. The record includes substantial evidence, instead, that Bearden left the City's employment in 2021.

The City also argues that Bearden's post-remand summary judgment motion (about 50 hours of attorney time) was not reasonable because it would have stipulated to the amount due for 2021. Dkt. 78 at 11–12.

The Court agrees that Bearden's appeal of its summary judgment order dismissing his RCW 38.40.060 claim required significant briefing in two courts. But discovery ended years ago, motion practice was limited, and there was no trial. Bearden glosses over the fact that he abandoned on appeal the state law claims that, if kept, could have led to a significant general damage verdict. Ocean Shores prevailed on these claims. The effort and discovery he put into them, including the subsequent efforts to name the correct party for those claims, were not productive and were not reasonably spent.

The City's stipulation that Bearden "prevailed" on his RCW 38.40.060 / USERRA claim is not a concession that the fees he incurred over the five years of this case—after its offer and the likely end of Bearden's employment—were reasonable considering what was really at stake. Bearden correctly contends that the $200,000 settlement is an "excellent" result; it is quite conceivably more than he would have received at trial. The

Court does not agree that it was reasonable to spend more than a million dollars in fees to obtain it.

For these reasons, the Court concludes that the reasonable number hours spent in successfully litigating this case are significantly lower than the number of hours requested. It does not conclude there is any reason to further adjust this lodestar figure up or down. It has reduced Jarrad's and Tymczyszyn's requested hours by 45%.

The Court will award the attorneys the following fees:

| Attorney | Reasonable Rate | Reasonable Hours | Total |
|---|---|---|---|
| Thomas Jarrad | $625 | 505 | $315,625 |
| John Tymczyszyn | $500 | 361 | $180,500 |
| Joseph Barton | | 0 | 0 |
| | | | **$496,125** |

**D. Bearden is entitled to some costs.**

Bearden also seeks $25,000 in costs associated with this case. Dkt. 75 at 13. The City argues, again persuasively, that a significant portion of these costs are insufficiently supported and/or reflect costs that would not typically be paid by paying clients. The Court agrees. It will reduce the awarded costs to reflect the amounts reflected in the City's response, Dkt. 78 at 22, and will award instead **$10,195**.

The Clerk shall enter an **AMENDED JUDGMENT** reflecting this attorneys' fees and cost award, and close the case.

**IT IS SO ORDERED**.

Dated this 13th day of November, 2026.

BENJAMIN H. SETTLE
United States District Judge